IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:25-CV-43-KS

| | | |
|---|---|---|
| ALFRED LASSITER,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | ) | **ORDER** |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision of the Social Security Administration. Alfred Lassiter ("Plaintiff") filed this action seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and the matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, the undersigned remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on October 20, 2023, with an alleged onset date of March 1, 2022.[1] (R. 17, 227–28.) The application was denied initially and upon

[1] Plaintiff, through his representative, submitted a blank request to amend his alleged onset date. (R. 258.) During the hearing before the ALJ, the ALJ stated that

reconsideration, and a request for hearing was filed. (R. 17, 73, 91, 119–20, 127–28.) A telephonic hearing was held on August 15, 2024, before Administrative Law Judge ("ALJ") Catherine Harper, who issued an unfavorable ruling on September 10, 2024. (R. 17–72.) On July 14, 2025, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff initiated this action on September 9, 2025, seeking judicial review of the final administrative decision.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (alteration in original) (citation omitted) (first quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and then quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make

---

the alleged onset date was amended to September 1, 2023, and referenced R. 258. (R. 43 (referencing administrative record Exhibit 12D, which corresponds to R. 258).) Neither party has raised any issue about this amended alleged onset date.

credibility determinations, or substitute [its] judgment for that of the [Commissioner].” *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (first and second alterations in original) (quoting *Craig*, 76 F.3d at 589). Rather, in conducting the “substantial evidence” inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant’s age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm’r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide “whether the claimant is able to perform other work considering both [the claimant’s RFC] and [the claimant’s] vocational capabilities (age, education, and past work experience) to adjust to a new job.” *Hall*

*v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through March 31, 2027. (R. 19.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 1, 2023, the amended alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff has the severe impairments of "coronary arterial disease (CAD) and hypertension, status-post non-ST elevated myocardial infarction (NSTEMI) on May 7, 2024; peripheral vascular disease/peripheral arterial disease; and lumbago." (R. 20.)

At step three, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App. 1. (R. 22.) The ALJ expressly considered Listings 1.15, 1.16, 4.04, 4.11, and 4.12. (R. 22–23.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform medium exertional work as defined in 20 CFR 404.1567(c) with the following limitations. [Plaintiff] can frequently climb ladders, ropes or scaffolds. He can frequently climb ramps or stairs as well as stoop.

(R. 24.) In making the assessment, the ALJ stated she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence." (*Id.*) At step four, the ALJ determined Plaintiff is capable of performing past relevant work as a carpenter. (R. 30.) The ALJ made alternative step-five findings, determining that, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: produce packer (DOT #920.687-134), machine feeder (DOT #699.686-010), and industrial sweeper cleaner (DOT #389.683-010). (R. 31.) The ALJ concluded that Plaintiff has not been disabled under the Act from September 1, 2023, through September 10, 2024, the date of the decision. (R. 32.)

## IV. Plaintiff's Arguments

Plaintiff argues that the RFC is not supported by substantial evidence. (Pl.'s Br. [DE #12] at 1.) Specifically, Plaintiff argues (i) the ALJ improperly evaluated the medical opinion of consultative examiner ("CE") Mary Berry, NP-C, who opined that Plaintiff has more significant standing/walking limitations than those assessed in the RFC, and (ii) the ALJ improperly discounted Plaintiff's statements about his symptom severity. (*Id.* at 10–18.) The undersigned agrees with Plaintiff.

To enable meaningful judicial review, an ALJ must explain how the evidence led to her conclusions. *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020) ("To

pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016))); *see also Mascio*, 780 F.3d at 637 (remand is necessary when a reviewing court is "left to guess about how the ALJ arrived at [her] conclusions"); SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). Merely summarizing or listing evidence without providing the relevant logical explanation frustrates meaningful review. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d 656, 662 (4th Cir. 2017),—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Where a court is "left to guess about how the ALJ arrived at [the] conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

In *Dowling v. Comm'r of SSA*, 986 F.3d 377 (4th Cir. 2021), the court emphasized the importance of conducting a function-by-function assessment of a claimant's abilities in accord with 20 C.F.R. § [404.1545] and SSR 96–8p, 1996 WL 374184, at *1. *Dowling*, 986 F.3d at 387. Such functional assessment is especially important when a particular function, such as standing/walking, is contested and "critically relevant" to a claimant's disability status. *Dowling*, 986 F.3d at 388–89. Furthermore, when assessing a claimant's ability to perform a relevant function, the

ALJ must explain the extent to which the claimant can perform the function over the course of a full workday. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." (citing *Brown v. Comm'r of SSA*, 873 F.3d 251, 263 (4th Cir. 2017))); *Arakas*, 983 F.3d at 100 (discussing *Brown*, *Woods*, and SSR 96–8p); SSR 96–8p, 1996 WL 374184, at *2 (RFC represents a claimant's "maximum remaining ability to do sustained work activities" over a full work week).

As noted by ALJ Harper, Plaintiff repeatedly and consistently reported that his standing/walking ability was significantly limited. (R. 25 (summarizing Plaintiff's testimony before the ALJ and Plaintiff's reports at physical therapy evaluation), 26 (Plaintiff's report of "chronic lower extremity pain" during initial primary care session), 27 (Plaintiff's reports at physical therapy evaluation and ongoing reports to primary care provider), 28 (Plaintiff's reports to vascular specialist).) Indeed, ALJ Harper found Plaintiff suffers from the severe impairment of peripheral vascular disease/peripheral arterial disease (R. 20), a disease that "may [cause] pain in [a claimant's] calf after walking a distance that goes away when [the claimant] rest[s] (intermittent claudication)" or may cause pain in the calf even when at rest, 20 C.F.R. Part 404, Subpart P, App. 1, § 4.00(G)(1). *See also* Claudication, Mayo Clinic, https://perma.cc/JQ27-PQC8 (last visited Sept. 16, 2026).

ALJ Harper, however, did not explain how she determined Plaintiff can sit and stand, off and on, for approximately six hours in a full workday. (R. 23–30); SSR 83–10, 1983 WL 31251, at *6 (Jan. 1, 1983) (standing and walking requirements of medium exertional work). The only rationale provided by ALJ Harper as to this contested function is as follows:

> Due to evidence of stable cardiac findings and generally improved blood pressure despite his history of hypertension, myocardial infarction, CAD, and peripheral vascular/arterial disease, [Plaintiff] can frequently climb. He can also lift and carry 50 pounds occasionally and 25 pounds frequently; stand or walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday.

(R. 28.) It is not clear why evidence of "stable cardiac findings and generally improved blood pressure" led ALJ Harper to find Plaintiff has the RFC to perform the standing/walking requirements of medium exertional work, particularly in light of ALJ Harper's determination that Plaintiff's peripheral arterial disease is a severe impairment. That explanation is deficient under 20 C.F.R. § 404.1545(b), SSR 96–8p, and *Dowling*, 986 F.3d at 387. This error is especially harmful because there is objective medical evidence that materially contradicts ALJ Harper's assessment of Plaintiff's standing/walking ability.

As noted by ALJ Harper, Plaintiff underwent a lower extremity peripheral arterial study on May 13, 2024. (R. 27 (citing R. 439 (treatment note from Michael David Tripp, M.D.[2])).) ALJ Harper accurately noted Dr. Tripp's testing revealed

[2] According to public records on the North Carolina Medical Board website, Dr. Tripp has been board-certified in vascular and interventional radiology since 1989, in addition to other radiology-related specializations. North Carolina Medical Board, Licensee Search, https://perma.cc/LD5U-YA3D (last visited Sept. 18, 2026).

"moderate severe to severe bilateral lower extremity arterial occlusions." (R. 27 (citing R. 439).) But Dr. Tripp's treatment note also indicates additional pertinent information, namely, that "the exercise portion [of the] examination was not administered due to limited walking and mobility" and testing revealed "diminished pressures and waveforms in the lower extremities bilaterally with ABI 0.44 on the right and 0.45 on the left."[3] (R. 439.) ALJ Harper did not explain how she reconciled this objective medical evidence with her RFC findings (and the evidence she relied on to make those findings), despite referencing Dr. Tripp's treatment note. Furthermore, this objective medical evidence appears to support CE Berry's opinion as to Plaintiff's standing/walking ability and Plaintiff's statements about his standing/walking ability. (*Cf.* R. 379–380 (CE Berry's opinion).) The ALJ's failure is even more remarkable because the ALJ explicitly credited the observations of physical therapist ("PT") Conor Klein, who noted that, during an initial evaluation, Plaintiff could not perform more than two minutes of treadmill walking due to shortness of breath and "noted heaviness in [bilateral lower extremities]." (R. 495 (note from Conor Klein, PT); R. 29 (ALJ citing R. 492–95 and finding the observation of Conor Klein to be "persuasive" and noting that PT Klein's observation "seems consistent with his prior

---

[3] Although not raised by Plaintiff, Dr. Tripp's clinical findings regarding Plaintiff's ABI [Ankle Brachial Index] appear to provide evidence that Plaintiff meets the criteria for Listing 4.12. *Compare* 20 C.F.R. Part 404, Subpart P, App. 1, §§ 4.00(G)(7)(b) ("Listing 4.12A is met when your resting ankle/brachial systolic blood pressure ratio is less than 0.50."), 4.12(A) *with* (R. 23 (ALJ stating "the evidence does not document any of the clinical findings outlined in section 4.12A through 4.12D" of Listing 4.12)); *see also* Measuring and Understanding the Ankle Brachial Index (ABI), Stanford Medicine, https://perma.cc/395K-QVLJ (last visited Sept. 17, 2026).

notes that [Plaintiff] described symptoms of claudication rather than musculoskeletal impairment").) Effectively, ALJ Harper recognized that the record contained evidence from three medical sources indicating Plaintiff has notable standing/walking limitations and yet the ALJ elected not to explain Plaintiff's ability in this critically relevant functional domain.

This failure to reconcile materially inconsistent evidence in the record with the RFC findings infects ALJ Harper's evaluation of the CE Berry's medical opinion. ALJ Harper explained that she found CE Berry's opinion not persuasive because (1) it was an overestimate of Plaintiff's limitations based on a one-time examination; (2) it appears heavily reliant on Plaintiff's subjective report of symptoms; (3) it is not supported by the "generally normal examination findings"; and (4) it is inconsistent with "later primary care and cardiology examinations, [PT Klein]'s note that [Plaintiff] did not present with impairments requiring therapeutic intervention, and overall limited evidence that [Plaintiff] sought, required, or received any significant treatment for his back complaints throughout the period at issue." (R. 29.) As explained above, the objective medical evidence regarding Plaintiff's peripheral arterial disease appears consistent with CE Berry's opinion regarding Plaintiff's standing/walking ability. Furthermore, that objective medical evidence does not suggest "generally normal examination findings." *See Arakas*, 983 F.3d at 99 (reiterating that cherry-picking of record evidence is proscribed and holding that "misstat[ing] or mischaracteriz[ing] other material facts" can undermine substantial evidence finding). ALJ Harper failed to consider PT Klein's evaluation note in full,

which clearly explained that Plaintiff's walking ability appeared to be impaired by claudication, a common symptom of peripheral arterial disease. *See id.*

Finally, ALJ Harper's determination that Plaintiff's statements "are generally inconsistent with the available medical evidence, which supports no greater limitations than those [assessed by ALJ Harper]," fails to comply with SSR 16–3p. (R. 28.) As explained above, there is record evidence consistent with and supportive of Plaintiff's statements about his standing/walking ability, namely, Dr. Tripp's treatment note, PT Klein's evaluation note, and CE Berry's opinion. But ALJ Harper did not explain "how [her] evaluation of [Plaintiff]'s symptoms led to [her] conclusions" about Plaintiff's standing/walking ability in light of this evidence. SSR 16–3p, 2017 WL 5180304, at *8; (R. 28).

In sum, ALJ Harper failed to explain her findings as to a contested function, failed to reconcile materially inconsistent evidence with her RFC findings, improperly evaluated a consultative examiner's medical opinion, and failed to properly conduct and explain her evaluation of Plaintiff's statements about his symptoms. Remand is, therefore, necessary.

<u>CONCLUSION</u>

For the reasons stated above, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 21st day of September 2026.

KIMBERLY A. SWANK
United States Magistrate Judge